FILED '07 APR 06 13:30 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN WILSON,

       Plaintiff,

   v.

SOUTHERN OREGON UNIVERSITY,

       Defendant.

Civil No. 06-3016-PA

ORDER

PANNER, District Judge.

    Plaintiff brings this action alleging claims for violations of Title IX of the Education Act of 1972, 20 U.S.C. § 1681 et seq. (Title IX) and ORS 659A.203, and claims for breach of contract, intentional infliction of emotional distress, and intentional interference with economic relations. (Amended Complaint). Plaintiff seeks non-economic and economic damages, attorney fees, and costs. (Id.). This court has jurisdiction pursuant to 28 U.S.C. § 1331.

Defendant moves for partial summary judgment on plaintiff's claim for breach of contract (#33).

## I. **FACTS**

On February 16, 2005, plaintiff Kevin Wilson, signed a renewable, one year employment contract with defendant Southern Oregon University. (Defendant's Exhibit 1 at 1). Plaintiff's position title was Assistant Professor/Womens Basketball Coach and his rank was Assistant Professor. (Id.). The contract contained a list of **"IMPORTANT CONTRACT PROVISIONS"**, which were part of the terms and conditions of plaintiff's employment. (Id. at 2).

The list of **"IMPORTANT CONTRACT PROVISIONS"** provided in part:

**COMPLETE AGREEMENT:** The duties and responsibilities of this position are outlined in the position description attached and/or on file. The position description, along with official internal management directives issued by the President or his designee on personnel matters, SOU personnel policies and procedures, faculty constitution and by-laws (as applicable), Collective Bargaining Agreement (if applicable), and the Board of Higher Education Administrative Rules, constitute the terms and conditions of employment not otherwise contained in this notice of offer of appointment. . . .

* * * *

APPOINTMENT AND RENEWAL (Teaching Faculty): Reference - Article 10 - Appointments and Evaluation of Faculty, Sections A & B, sub-sections 1 through 7 of the APSOU/OUS Collective Bargaining Agreement, also Faculty Constitution and Bylaws as amended. . . .

(Id. at 2).

The Collective Bargaining Agreement (CBA) applies to the faculty members described in Article 3. (Defendant's Exhibit 2 at

ORDER - 2

3).  Under Article 3 of the Collective Bargaining Agreement (CBA),

> The bargaining unit shall consist of all SOU faculty who hold appointments at the rank of professor, associate professor, assistant professor, or instructor, and whose employment during the nine-month academic year is at least 50 full-time equivalent (persons must be at least half-time employees) and who spend at least sixty-six percent (66%) of that employed time in university-level teaching and/or research activities including employees with the title Department Chair. . . .

(Id. at 4).  Plaintiff was an APSOU bargaining unit member. (Defendant's Exhibit 4 at 1).

Pursuant to Article 10, Section B, Part 3 of the APSOU/OUS collective bargaining agreement (CBA), defendant retained a discretionary right not to renew plaintiff's employment contract. (Defendant's Exhibit 2 at 8).  Part 3 provides that: "Non-renewal of fixed term contracts is not a disciplinary personnel action and does not require the specification of cause." (Id.).  Article 10, Section B, Parts 1(b) and 2(b) required defendant to notify plaintiff of its decision not to renew the employment contract no later than December 15, 2004, which represented six months prior to the expiration of plaintiff's contract. (Id.).

The CBA contains **"Article 17. GRIEVANCE PROCEDURE AND ARBITRATION"**. (Id. at 20).  Section A(2) provides in part that: "The processes described in this Article are intended to be the sole method used for resolution of grievances, as that term is defined in Section B. . . ." (Id. at 21)(emphasis added).  Section B defines a grievance as "a claim that the terms of this Agreement

ORDER - 3

have been violated, misrepresented, or misapplied or that procedural steps in matters of appointment and reappointment have not been followed. . . ." (Id.).

Article 17 Section C(2)(b), the Formal Grievance Procedure, contains three Formal Grievance Steps. (Id. at 19-20). Any of three steps can be waived by mutual consent of the parties. (Id. at 20).

Article 17 Section C (2)(b)provides that if the grievant is not satisfied with the decision at any step, the grievant can proceed to the next step. (Id). Failure of the grievant to proceed to the next step is deemed acceptance of the decision rendered at that step. (Id.).

Article 17 Section E, Arbitration, provides in part that:

1.  If the grievance is not resolved at the President's level, the grievant or the Association may, within thirty (30) university calendar days of the receipt of the written response from the President's office, submit the issue to arbitration. . . .

(Id. at 21).

Article 17 Section E also provides that: "The arbitrator shall confine the decision solely to the application and/or interpretation of this Agreement and to whether procedural steps in matters of appointment, reappointment, and promotion have been followed. (Id. at 21). Under section E an arbitrator's award cannot be retroactive to a date earlier than forty calendar days before the date the grievance was initially filed. (Id. at 22).

ORDER - 4

In addition, Section E states that: "<u>The award of the arbitrator</u> <u>shall be final and binding upon 'OSBHE,' the Association and the</u> <u>Grievant(s) involved to the extent permitted by and in accordance</u> <u>with applicable law and the Article.</u>"   (Id.)(emphasis added).

In November and December 2004, allegations of misconduct surfaced regarding Plaintiff's performance as head coach of the women's basketball team. (Defendant's Exhibit 3).   In that letter, SOU informed Plaintiff (1) that an investigation into the allegations was underway and (2) that it decided not to renew his contract for the following academic year: "Because your contract may not be renewed pending the outcome of the investigation and because the university is obligated to give you six months notice of nonrenewal (under article 10, section 2 of the APSOU-SOU collective bargaining agreement), this letter will serve as such notification."   (Id.).

On April 22, 2005, Plaintiff filed a union grievance challenging SOU's notice as untimely and ambiguous.   (Defendant's Exhibit 4).   Plaintiff elected to forgo Steps I and II of the formal grievance process and to proceed directly to Step III, a hearing in front of SOU President, Elizabeth Zinser.   (Id. at 1).   The only remedies sought included (1) a letter from defendant stating that its notice was improper and (2) renewal of Plaintiff's contract for 2005-06.   (Id. at 3).

ORDER - 5

The Step III hearing was held on June 8, 2005. Plaintiff did not attend the hearing, but was represented by Connie Anderson and Kemble Yates, representatives of APSOU. (Defendant's Exhibit 5 at 1). President Zinser presided over the hearing and made a number of finding and conclusions. Among them, President Zinser ruled that defendant's notice was untimely because of an alleged ambiguous intertwining of disciplinary action and non-renewal action: "I find that Dr. Brimmer's December 13 letter was ambiguous about the notice of non-renewal in relation to the disciplinary investigation under way, rendering the nonrenewal notice untimely." (Id. at 2).

As a result, President Zinser ordered defendant to renew Plaintiff's contract for the following academic year. (Id. at 3). However, plaintiff was not reinstated as the coach women's basketball team. (Id.).

President Zinser's letter stated that:

This decision addresses your grievance as to timeliness of non-renewal. It is a final Administrative decision. You have no further appeal rights.

(Id.).

After plaintiff received President Zinser's letter, plaintiff contacted the union to discuss the decision. (Wilson Affidavit ¶4). Based upon the President's decision and plaintiff's

ORDER - 6

conversations with the union[1], plaintiff concluded he had exhausted the grievance process.  (Id.).

Plaintiff did not compel arbitration.  Plaintiff's breach of contract claim arises out this incident.

## II.  LEGAL STANDARDS

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ."  Fed. R. Civ. P. 56(c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact.  Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  Allen v. City of Los Angeles,

---

[1]Any alleged statements made by the union representatives constitute hearsay and, therefore, such statements are inadmissible.

ORDER - 7

66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1180 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995), <u>CERT. DENIED</u>, 517 U.S. 1167 (1996); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. <u>THI-Hawaii, Inc. v. First Commerce Fin. Corp.</u>, 627 F.2d 991, 993-94 (9th Cir. 1980); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. <u>Devereaux</u>, 263 F.3d at 1076.

ORDER - 8

### III.  **DISCUSSION**

Defendant moves for partial summary judgment on plaintiff's breach of contract claim arguing that plaintiff's failure to exhaust the administrative remedies in the CBA bars his claim.  In response, plaintiff argues that: 1) the collective bargaining agreement does not provide the exclusive remedy for plaintiff's breach of contract claim; 2) exhaustion does not apply to this case as this is not a Labor Management Relations Act case; 3) there is an issue of fact regarding whether plaintiff is excused under one of three exceptions to the exhaustion doctrine; and 4) the arbitration provision does not survive beyond the expiration of the contract.  In reply, defendant argues that: 1) plaintiff's breach of contract claim violates the plain language of the CBA which clearly states that disputes such as plaintiff's are to be resolved through the grievance procedure; 2) the CBA by its terms intends that issues related to notice of non-renewal be resolved through the grievance process and that the grievance process is the sole method for resolving such issues; 3) public policy favors enforcing grievance and arbitration procedures in CBAs; 4) there are no facts to suggest that the Oregon Employment Relations Board would not have handled plaintiff's arbitration fairly; 5) plaintiff's claim that defendant engaged in conduct that repudiated the grievance process is without merit; 6) even if plaintiff's union representatives were negligent, the court should apply the

ORDER - 9

exhaustion doctrine; and 7) plaintiff's rights and obligations under the CBA did not expire the day after his employment contract expired.

In cases where an employee is covered by a collective bargaining agreement which provides that certain disputes be resolved exclusively through the grievance and arbitration procedures and the employee fails to exhaust those procedures, "state and federal policy favoring the exclusivity of remedies provided in collective bargaining agreements bars any common law claim for breach of contract, unless plaintiff alleges facts that would establish an exception . . .". Richard v. Portland General Elec. Co., 83 Or. App. 59, 61 (1986). Three exceptions are: 1) an employer's repudiation of the grievance process or refusal to comply with the agreed-upon procedures; 2) a union's breach of its duty of fair representation to the employee; and 3) when exhaustion of remedies would be futile. Gilstrap v. Mitchell Bros. Truck Lines, 270 Or. 599, 606-612 (1974), cert. denied, 421 U.S. 1011 (1975). Plaintiff has the burden of establishing that the exception applies. Zuniga v. United Can Co., 812 F.2d 443, 449 (9th Cir. 1987); See Richard, 83 Or.App. at 63 (plaintiff failed to file an affidavit setting forth any facts showing that the union failed to fairly represent him).

Plaintiff argues that his breach of contract claim is a separate cause of action from breach of the CBA. However, the

ORDER - 10

undisputed facts show that the CBA was part of plaintiff's employment contract and applied to plaintiff, who was a member of the bargaining unit. (Defendant's Ex. 1 at 2; Defendant's Ex. 2 at 3-4; Defendant's Ex. 4 at 1).

Plaintiff argues that the CBA was not the sole remedy for breach of the terms of the CBA and that arbitration was not binding. However, the undisputed facts show that the CBA provided that it was the <u>sole</u> method for resolving grievances regarding procedural irregularities in reappointments. (Defendant's Ex. 2 at 21). The CBA provided for binding arbitration when a grievance was not resolved at step III of the grievance process. (Defendant's Ex. 2 at 21-24). Plaintiff proceeded to step III of the grievance process, seeking a letter stating that the notice of non-renewal was improper and renewal of his contract. (Defendant's Ex. 4). The President ruled that the non-renewal notice was untimely and ordered renewal of plaintiff's contract, but did not order reinstatement of plaintiff as coach of the women's basketball team. (Defendant's Ex. 5 at 3). Plaintiff failed to proceed with his grievance to arbitration as provided under the CBA. Plaintiff's breach of contract claim is based upon defendant's failure to give adequate notice of non-renewal of plaintiff's employment contract. (Second Amended Complaint ¶21). Based upon the undisputed facts, plaintiff's common law claim for breach of contract is barred, unless plaintiff can establish that one of the three exceptions

ORDER - 11

applies.   See Richard, 83 Or. App. at 61.

Plaintiff argues that the arbitrator did not have the power to award plaintiff damages.   The CBA required the arbitrator to confine his decision to application and interpretation of the CBA. (Defendant's Ex. 2 at 23).   However, this language does not limit that arbitrator's ability to award back pay.   See Corvallis School Dist. 509J v. Corvallis Education Association, 35 Or.App. 531, 534-537 (1978).

Plaintiff argues that the defendant repudiated the terms of the CBA by stating in the President's decision that it was a final administrative decision and plaintiff had no further appeal rights. (Id.).   The court finds that this statement is insufficient to establish an issue of fact regarding repudiation of the arbitration provisions of the grievance procedure by defendant.   This statement says nothing about the plaintiff's rights to proceed to arbitration.   See Huhn,II v. Pullman Power Products Corp., 874 F.2d 816, *3 (9th Cir. 1989)(court's require repudiation of the specific grievance procedure).

Plaintiff argues that the union failed to fairly represent him by misleading him as to his available remedies.   Plaintiff contacted the union and the union representatives led him to believe he had exhausted the grievance process.   (Wilson Affidavit ¶4).   A union breaches its duty of fair representation when its conduct toward a member is arbitrary, discriminatory, or in bad

ORDER - 12

faith.  Id. at *2.  A union's conduct is not considered arbitrary when it makes an error in interpreting particular provisions of the collective bargaining agreement.  Id.  Plaintiff has presented no evidence that the union's actions were discriminatory or in bad faith.

Plaintiff argues that it would have been futile for him to pursue arbitration.  Plaintiff presented no evidence to support this argument.

### III.  ORDER

Based on the foregoing, it is ordered that defendant's motion for partial summary judgement (#33) is granted, and plaintiff's breach of contract claim is dismissed.


DATED this _____ day of April, 2007.

UNITED STATES DISTRICT JUDGE

ORDER - 13